UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEMARCO L. MCFARLAND,           )
                                )
            Plaintiff(s),        )
                                )
    v.                           )          Case No. 4:22-cv-00720-SRC
                                )
KYLE BARBA, et al.,              )
                                )
            Defendant(s).        )

**Memorandum and Order**

This matter comes before the Court on the motion of Plaintiff DeMarco L. McFarland for leave to commence this civil action without prepayment of the required filing fee.  Doc. 2. Having reviewed the motion, the Court finds that it should be granted.  *See* 28 U.S.C. § 1915(a)(1).  Additionally, for the reasons discussed below, the Court dismisses this action without prejudice.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense.  *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016).

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint and the Amended Complaint

Plaintiff is a self-represented litigant who filed a civil rights complaint pursuant to 42 U.S.C. § 1983[1] on July 7, 2022. The complaint names Kyle Barba, a Missouri Highway Patrolman, as the sole defendant. Doc. 1 at p. 2. Barba is sued in his official capacity only. *Id.* at p. 1. The complaint contains allegations of constitutional violations stemming from a traffic stop. *Id.* at p. 3.

In the "Statement of Claim," Plaintiff asserts that on June 17, 2022, he "was unlawfully detained, assaulted with pepper spray, falsely arrested, and placed in detention for [approximately] 19 hours." *Id.* at p. 5. He states that this occurred on "interstate I-64 west at the

---

[1] In the section of the form complaint for asserting jurisdiction, Plaintiff also lists 18 U.S.C. § 241, 18 U.S.C. § 242, 18 U.S.C. § 245, 18 U.S.C. § 249, 42 U.S.C. § 14141, 28 U.S.C. § 1331, and 28 U.S.C. § 1361 as jurisdictional bases. As he is complaining about the purported violation of his constitutional rights by state actors, this action is properly brought under 42 U.S.C. § 1983.

Maryville Center Drive," when Officer Barba allegedly broke his driver's side window and deployed "a pepper spray substance in [his] eyes." Officer Barba "then placed [him] in handcuffs, took [him] to [the] hospital, and then took [him] to St. Louis County [jail]." Plaintiff was "placed on [a] 24 hour hold" and was released on June 18, 2022.

Due to this experience, Plaintiff states that he has "anxiety issues," and that "this event only heightened an already preexisting issue that is not under control." He seeks total damages in the amount of $2,025,000. *Id.* at p. 4.

On July 11, 2022, Plaintiff filed five exhibits relating to the June 17, 2022 incident. (Docket No. 4). First, there is an unsigned summons dated June 18, 2022, which does not provide the date and time plaintiff is to appear in court. Doc. 4 at p. 1.

Second, there is a probable cause statement authored by Officer Barba.[2] *Id.* at p. 2. According to the statement, Officer Barba conducted a traffic stop when he observed Plaintiff's vehicle exceeding the speed limit. When Officer Barba approached the vehicle, Plaintiff refused an instruction to roll down the window and refused to exit the car when informed he was under arrest. Even after using a "window punch," Plaintiff refused Officer Barba's demands to exit, and "grabbed onto the vehicle interior" to prevent Barba from pulling him out. Eventually, after giving plaintiff a warning, Officer Barba deployed "OC aerosol," whereupon plaintiff exited the vehicle.

Third, there is an information charging Plaintiff with misdemeanor resisting arrest. *Id.* at p. 4. The information is signed by Prosecutor Godsy, who is named as a defendant in the amended complaint.

---

[2] It appears that the officer's name is actually Kyle Barda, but the Court utilizes Plaintiff's spelling.

3

Fourth, Plaintiff has attached copies of six uniform citations he received from Officer Barba.  *Id.* at pp. 6–11.

Finally, there is a Missouri Department of Revenue form indicating that plaintiff refused to submit to an alcohol or drug test during the June 17, 2022 traffic stop.  *Id.* at p. 12.  The form is signed by Officer Barba.

On July 12, 2022, the Court received from Plaintiff an amended complaint brought pursuant to 42 U.S.C. § 1983, alleging the "deprivation of [plaintiff's] civil rights" under the First, Fourth, Eighth, and Fourteenth Amendments.  Doc. 5 at p. 3.  He also purports to bring this action under 28 U.S.C. § 1455, seeking to remove his criminal prosecution.  Plaintiff names Officer Barba, Prosecutor Godsy, and St. Louis County Circuit Clerk Joan M. Gilmer as defendants.  *Id.* at p. 2.  He does not indicate the capacity in which Defendants are sued.

In the "Statement of Claim of his amended complaint, Plaintiff again asserts that Officer Barba "violated [his] civil rights and unlawfully arrested [and] detained [him] without [his] consent" on June 17, 2022.  *Id.* at p. 5.  He accuses Officer Barba of excessive force due to injuries sustained after "glass was busted out and [he] was sprayed with pepper spray" during a traffic stop.  Plaintiff contends that he requested "a supervisor come to [the] traffic stop," but that he was told he "was under arrest before [he] could even identify [himself]."  He states that he is "on record for Type I diabetes," and that he has PTSD, chronic depression, and anxiety, which have been "heightened" by this incident.  Based on these facts, Plaintiff concludes that Officer Barba "used excessive force and unlawfully arrested and imprisoned [him]."

Regarding the other two defendants, Plaintiff states only that Prosecutor Godsy "summoned [him] to court," and that Court Clerk Gilmer "filed" his criminal case.

Plaintiff seeks monetary damages of $2,025,000 for pain, suffering, and emotional distress. *Id.* at p. 6.  He also requests "that [his] state court case be removed to this said venue [and] jurisdiction."  *Id.* at p. 5.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging constitutional violations during a June 17, 2022 traffic stop.  Because Plaintiff is proceeding in forma pauperis, the Court must review his pleadings under 28 U.S.C. § 1915.  For the reasons discussed below, the Court dismisses this case without prejudice.

### A.  Official Capacity Claims

In the amended complaint, Plaintiff fails to indicate the capacity in which Defendants are sued.  Plaintiff can bring a 42 U.S.C. § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both.  *See Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007).  However, if his complaint is silent about the capacity in which the defendants are being sued, the complaint is interpreted as including only official capacity claims.  *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995).

Because Plaintiff has not indicated the capacities in which Defendants are sued, the Court must treat his claims as being made against Defendants in their official capacities only.  In an official capacity claim against an individual, the claim is actually "against the governmental entity itself."  *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017).  Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer."  *Johnson*, 172 F.3d at 535.

Here, defendants Godsy and Gilmer are alleged to be employees of St. Louis County, while defendant Barba is alleged to be an employee of the State of Missouri.  To prevail on his official

capacity claims, Plaintiff must establish the liability of these respective governmental employers for the alleged conduct.  *See Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016).

> **i.    Claim Against Prosecutor Godsy and Court Clerk Gilmer**

Both Prosecutor Godsy and Court Clerk Gilmer are alleged to be employed by St. Louis County.  Thus, as explained above, the official capacity claims against them are treated as claims against the county itself, their employer.

A local governing body such as St. Louis County can be sued directly under 42 U.S.C. § 1983.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct.  *Kelly*, 813 F.3d at 1075.  Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).  Thus, there are three ways in which Plaintiff can prove the liability of St. Louis County.

First, Plaintiff may show the existence of an unconstitutional policy.  "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."  *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016).  For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise.  *Szabla v. City of Brooklyn*, 486 F.3d 385, 389 (8th Cir. 2007).  However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers."  *Id*. at 390.

"A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, Plaintiff may establish a claim of liability based on an unconstitutional "custom." In order to do so, Plaintiff must demonstrate:

1)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2)  Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3)  That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, Plaintiff may assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).

However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists.  *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).  In this case, Plaintiff has not alleged any facts supporting the proposition that St. Louis County harmed him due to an unconstitutional policy, custom, or failure to train.

First, as to policy, Plaintiff points to no "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [St. Louis County's] governing body" as being at issue in this case.  Certainly, he has not alleged that his traffic stop and subsequent arrest occurred because of "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."

Second, regarding custom, Plaintiff has not demonstrated the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" St. Louis County employees, much less that policymakers were deliberately indifferent to or tacitly authorized such misconduct.  Instead, Plaintiff's facts, such as they are, concern a single traffic stop and arrest conducted by Officer Barba.  A single occurrence is not sufficient to establish a pattern.  *See Wedemeier v. City of Ballwin*, 931 F.2d 24, 26 (8th Cir. 1991).

Likewise, Plaintiff has not adequately asserted that St. Louis County was deliberately indifferent in failing to train or supervise its employees.  Such liability requires facts showing the county "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights."  *Jennings*, 397 F.3d at 1122.  This notice is typically demonstrated by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees."  As already explained, Plaintiff here has not presented a pattern of unconstitutional behavior, but focuses on a single traffic stop conducted by Officer Barba.

8

Finally, to the extent that Plaintiff seeks to hold St. Louis County liable for the actions of Prosecutor Godsy and Court Clerk Gilmer, the Court notes that the county cannot be held liable merely because it employs a tortfeasor.  *See A.H. v. City of St. Louis*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under [42 U.S.C.] § 1983, a municipality . . . cannot be liable on a respondeat superior theory").

For all these reasons, Plaintiff has failed to state a claim against St. Louis County.  *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, the official capacity claims against Prosecutor Godsy and Court Clerk Gilmer must be dismissed.

### ii.    Claim Against Officer Barba

Officer Barba is alleged to be an employee of the State of Missouri, meaning that the official capacity claim against him his treated as a claim against the state itself.

To the extent that plaintiff is seeking monetary damages, this claim is barred by the doctrine of sovereign immunity.  "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment confers sovereign immunity on a nonconsenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).  In addition, the Eleventh Amendment also bars a claim for damages against a state employee sued in his official capacity.  *See Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception does not apply because the Supreme Court has determined that 42 U.S.C. § 1983—under which this case arises—does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is also inapplicable, because the State of Missouri has not waived its immunity in this type of action. *See* Mo. Rev. Stat. § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles . . . within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property").

Because there are no exceptions to sovereign immunity here, plaintiff's official capacity claim against Officer Barba for money damages is barred by sovereign immunity.

To the extent—if any—that Plaintiff is seeking prospective injunctive relief, he has failed to state a claim. As discussed above, a governmental entity may be held liable due to an unconstitutional policy, custom, or failure to train. *See Mick*, 883 F.3d at 1079. With regard to policy, Plaintiff does not allege that his traffic stop and subsequent arrest occurred because of "a deliberate choice of a guiding principle or procedure made by the [governmental] official who has final authority regarding such matters." As to custom, he presents no facts showing a "widespread, persistent pattern of unconstitutional misconduct," but instead confines his allegations to a single incident. For the same reason, Plaintiff has not established a deliberately indifferent failure to train or supervise, as he does not show that the State of Missouri "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights" by alleging a "pattern of similar constitutional violations by untrained employees." *Jennings*, 397 F.3d at 1122.

Insofar as Plaintiff may be seeking prospective injunctive relief, his official capacity claim against Officer Barba must be dismissed for failure to adequately assert the State of Missouri's liability.

**B. Individual Capacity Claims**

As noted above, Plaintiff is presumed to have sued Defendants in their official capacities only. Moreover, in his original complaint, he expressly noted that Officer Barba was being sued in his official capacity. Because Plaintiff has failed to adequately allege official capacity claims against the Defendants in this action, the case must be dismissed. Even if Plaintiff had sued Defendants in their individual capacities, however, this action would still be subject to dismissal.

**i.      Claim Against Prosecutor Godsy**

11

Any claim against Prosecutor Godsy in his individual capacity would be barred by prosecutorial immunity.  Prosecutors are immune from 42 U.S.C. § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties.  *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982).  *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980).  The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified.  *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996).  A prosecutor is entitled to absolute immunity if he or she is acting as an advocate for the State in a criminal prosecution.  *Id*.  On the other hand, a prosecutor is entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity.  *Id*.

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process."  *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016).  For instance, "[t]he acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government."  *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006).

The entirety of the allegations against Prosecutor Godsy consists of Plaintiff's statement that "Jay A. Godsy summoned [him] to court."  As noted above, "preparing, signing, and filing a criminal complaint constitute prosecutorial functions" that are entitled to absolute immunity.  Accordingly, Prosecutor Godsy is immune from suit.

Even if immunity did not apply, Plaintiff has failed to state a claim.  Liability in a 42 U.S.C. § 1983 case is personal.  *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017).  In other words, "[g]overnment officials are personally liable only for their own misconduct."  *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015).  As such, § 1983 liability requires a

showing of "a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)).  To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

Here, Plaintiff has alleged only that Prosecutor Godsy "summoned [him] to court." There is nothing to indicate that this action violated any of Plaintiff's constitutional rights.  Thus, even if the Court were to treat Plaintiff's claim against Prosecutor Godsy as being made in an individual capacity, the claim would be subject to dismissal.

### ii.      Claim Against Court Clerk Gilmer

Any individual capacity claim against Court Clerk Gilmer would be dismissed for failure to state a claim.  As explained above, a government official is "personally liable only for [his or her] own misconduct" in a 42 U.S.C. § 1983 action.  *See Krigbaum*, 808 F.3d at 340.  Thus, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga*, 442 F.3d at 1132.  That is, there must be a causal connection between an action taken by defendant and a deprivation of plaintiff's rights.  *See Kohl*, 5 F.3d at 1149.

Here, the sole allegation against Court Clerk Gilmer is that Gilmer "filed 22SL-CR04745," an apparent reference to his criminal case.  In other words, Plaintiff accuses Court Clerk Gilmer of doing her job as Clerk of Court.  Nothing in this single fragment of a sentence demonstrates the violation of one of Plaintiff's constitutional rights, let alone that Court Clerk Gilmer is personally responsible for such a violation.  Therefore, even if the Court were to treat Plaintiff's claim against Court Clerk Gilmer as being made in an individual capacity, the claim would be subject to dismissal.

### iii.     Claim Against Officer Barba

Any claim against Officer Barba in his individual capacity for excessive force and unlawful arrest would be dismissed for failure to state a claim.

With regard to excessive force, the "Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello, Ark.*, 894 F.3d 993, 998 (8th Cir. 2018). *See also Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) ("The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen"). The violation of this right is sufficient to support an action under 42 U.S.C. § 1983. *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1007 (8th Cir. 2003).

Whether force is excessive under the Fourth Amendment requires a determination of whether or not law enforcement officers' actions are "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Ellison v. Lesher*, 796 F.3d 910, 916 (8th Cir. 2015). Factors that are relevant to the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Burnikel v. Fong*, 886 F.3d 706, 710 (8th Cir. 2018). "However, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Robinson v. Hawkins*, 937 F.3d 1128, 1135–36 (8th Cir. 2019). Law enforcement officers undoubtedly have a right to use some degree of physical force, or threat of physical force, to effect a lawful seizure. *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011).

In this case, Plaintiff has alleged that Officer Barba used force against him. Specifically, he alleges that Officer Barba broke the glass in his window and sprayed him with pepper spray.

14

Plaintiff has not, however, presented any facts demonstrating that Officer Barba's use of force was unreasonable.  For example, he has not alleged that he was compliant with commands, that he was not actively resisting arrest, or that he was not warned that force would be used.  *See Tatum v. Robinson*, 858 F.3d 544, 550 (8th Cir. 2017) ("When a suspect poses a non-immediate safety threat by repeatedly refusing to comply with officers' reasonable, lawful commands, officers may reasonably use some force to secure compliance").  To the contrary, one of Plaintiff's own exhibits indicates that he refused to roll down his window; was warned multiple times that the window would be broken if he continued to refuse; refused to exit the vehicle after the window was broken; held onto the vehicle when Officer Barba tried to pull him out; was warned that pepper spray would be deployed if he refused to exit; and again, refused Officer Barba's command to leave the vehicle. (Docket No. 4 at 2).

In short, Plaintiff has not presented sufficient facts to establish that Officer Barba's use of force was unreasonable under the circumstances.  Furthermore, his legal conclusion that "excessive force" was used is not entitled to the presumption of truth.  *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level").

As to Plaintiff's claim of unlawful arrest, the Fourth Amendment provides that "a person has a right to be secure in his person and warrants may not issue but upon probable cause." *Ross v. City of Jackson*, 897 F.3d 916, 920 (8th Cir. 2018).  "It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013).  However, a

false arrest claim under 42 U.S.C. § 1983 "fails as a matter of law where the officer had probable cause to make the arrest." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001).

Probable cause exists where there are facts and circumstances within a law enforcement officer's knowledge that are sufficient to lead a person of reasonable caution to believe that a suspect has committed or is committing a crime. *Galarnyk v. Fraser*, 687 F.3d 1070, 1074 (8th Cir. 2012). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010).

Probable cause can still exist even when an officer mistakenly arrests a suspect, as long as the mistake is objectively reasonable. *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). Similarly, the fact that a suspect arrested by law enforcement is later found innocent is not material. *Linn v. Garcia*, 531 F.2d 855, 861 (8th Cir. 1976). Nonetheless, the substantial latitude given to law enforcement officers is "not without limits," and an officer "is not free to disregard plainly exculpatory evidence." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). Furthermore, "probable cause does not exist when a minimal further investigation would have exonerated the suspect." *Id*.

Here, plaintiff provides no facts to support the contention that Officer Barba arrested him without probable cause. His "Statement of Claim" does not address the issue, and none of his assertions demonstrate that Officer Barba lacked reasonable grounds to believe plaintiff guilty of committing a crime. For example, Plaintiff does not allege that Officer Barba pulled him over for no reason, or that he did not resist or interfere with Barba's attempt to arrest him. Once again, to the contrary, Plaintiff's own exhibit shows that Officer Barba initiated a traffic stop due to plaintiff's excessive speed, and that plaintiff began to immediately ignore Barba's commands.

To state a claim, Plaintiff must do more than simply present an unsupported legal conclusion. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

For all these reasons, even if the Court were to treat Plaintiff's excessive force and unlawful arrest claims against Officer Barba as being made in an individual capacity, the claims would be subject to dismissal.

### C.  Request for Removal

In his amended complaint, Plaintiff requests that his "state court case be removed to this" Court.  As a preliminary matter, the Court notes that it has been unable to find Plaintiff's case on Case.net, Missouri's online case management system.  More precisely, the case number provided by Plaintiff identifies a case that appears unrelated to this matter, involving a different defendant and a different criminal charge.[3]

Even if Plaintiff's state case had been properly identified, he cannot seek removal in a 42 U.S.C. § 1983 action.  Rather, federal law provides a procedure for removing both civil and criminal actions.  *See* 28 U.S.C. § 1446 (procedure for removal of civil actions); and 28 U.S.C. § 1455 (procedure for removal of criminal prosecutions).  To remove a criminal action from state court, plaintiff must file "a notice of removal" that contains "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant."  *See* 28 U.S.C. § 1455(a).  Plaintiff has not done this, so his request for removal is denied.

### D.  Motion to Appoint Counsel

---

[3] The case number provided by plaintiff is 22SL-CR04745. Searching this number on Case.net leads to *State of Missouri v. Jacob Randall Davis*, No. 22SL-CR04745 (21st Jud. Cir., St. Louis County).  According to the criminal complaint, the defendant is charged with felony stealing for an incident allegedly taking place on October 14, 2021.

Plaintiff has filed a motion to appoint counsel.  (Docket No. 3).  The motion is denied as moot as this case is dismissed without prejudice.  *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's [2] Motion for Leave to Proceed in Forma Pauperis  is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's [3] Motion for Appointment of Counsel is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 30th day of August, 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE